THE NATIONAL SHAWMUT BANK OF BOSTON *vs.* THE FIDELITY MUTUAL LIFE INSURANCE COMPANY.

Suffolk. January 3, 1945. — April 18, 1945.

Present: FIELD, C.J., LUMMUS, QUA, & SPALDING, JJ.

*Unjust Enrichment. Restitution. Warranty. Contract,* Implied. *Payment. Bona Fide Purchaser.*

Where an insurance company, through a forgery of the signature of the insured under a life insurance policy issued by it, granted a policy loan in the name of the insured and subsequently, from the proceeds of a loan in the name of the insured, obtained from a bank with the policy as collateral security by the forger through a further forgery of the signature of the insured, received payment of the amount of its policy loan from the bank and thereupon cancelled its supposed lien upon the policy, both parties acting in good faith, without knowledge of the forgeries and without negligence, the insurance company, while not liable to the bank on any theory that it had impliedly warranted the validity of such supposed lien, was liable to the bank for the sum so paid by the bank to it on the ground that it had been unjustly enriched through receiving money which in equity and good conscience belonged to the bank and should be restored thereto; the insurance company was not a purchaser for value of the money so paid to it.

· CONTRACT. Writ in the Superior Court dated April 7, 1944.

·· The case was heard by *Beaudreau, J.*

*R. G. Dodge,* (*H. S. Davis* with him,) for the plaintiff.

*F. H. Nash,* (*B. Aldrich* with him,) for the defendant.

LUMMUS, J. In this case we must decide which of the innocent parties must bear a loss caused by the forgery and fraud of one Meissel, an insurance broker in the city of New York. The facts appear in a case stated. The judge made no decision, but reported the case under G. L. (Ter. Ed.) c. 231, § 111.

One Schneierson held life insurance policies on his own life in the defendant company and in five other life insurance companies. Evidently Meissel had the custody of the policies or at least access to them. On July 15, 1942, Meissel sent to the defendant the policy issued by it, together with an application for a loan of $2,520 upon the security of the policy, and a policy loan agreement, both purporting to be signed by Schneierson. In fact the signatures had been forged by Meissel. On July 17, 1942, the loan was completed, and the defendant in Philadelphia sent through its New York office to Meissel in New York its check on a Philadelphia bank for $2,520 payable to Schneierson. Instead of delivering the check to Schneierson, Meissel forged Schneierson's name by way of indorsement on the check, collected it, and kept the proceeds.

By a similar forgery Meissel obtained a check for a similar policy loan in the name of Schneierson from each of the five other companies already mentioned, upon the security of a policy owned by Schneierson which had been issued by the lending company, forged Schneierson's name by way of indorsement upon the check, and collected and kept the proceeds. The aggregate of the loans so negotiated and of the checks so obtained from the defendant and the other five companies was about $25,000. In March, 1943, Meissel formed a desire to replace the several loans from the six insurance companies by a single loan at a lower rate of interest.

Acting ostensibly on behalf of Schneierson, Meissel en-

gaged Faber & Company, a reputable firm of note brokers in the city of New York, which had often dealt with the plaintiff, to replace the loans with a single loan. Faber & Company offered the plaintiff an opportunity to lend Schneierson $25,500 on the security of his policies in the defendant and the other five insurance companies already mentioned. After some negotiation, the plaintiff received from Faber & Company an application for such a loan purporting to bear the signature of Schneierson, which really was forged by Meissel. Meissel had furnished Faber & Company with $2,000, which Faber & Company transmitted to the plaintiff by check in connection with that application. The application contained the following: "From the proceeds of my loan plus the accompanying check in the amount of $2,000, kindly pay to the insurance companies an amount sufficient, as stated by them, to liquidate any outstanding indebtedness against these policies and account to me for any balance."

The plaintiff received from Faber & Company a promissory note for $25,500, and also an assignment as collateral security therefor of the policy issued by the defendant to Schneierson. Both purported to be signed by Schneierson, but the signatures were forged by Meissel. By similar transactions the plaintiff received similar assignments, likewise forged, as collateral security for the same note, of the policies issued by the five other insurance companies already mentioned.

The plaintiff, having on hand the $2,000 plus $25,114.66, the net proceeds of the note after discounting it, paid to the defendant on April 2, 1943, the sum of $2,627.69 (the amount claimed by the defendant to be due), in discharge of the defendant's prior supposed lien upon the policy. The defendant cancelled its claim upon the policy, and sent the policy and its original loan agreement to the plaintiff. The plaintiff paid to the other five insurance companies in the aggregate the sum of $24,289.70 which was the amount of their loans, taken together. The plaintiff had a balance remaining of $197.27, which it paid by its check payable to Schneierson. Meissel obtained that check, forged an in-

dorsement purporting to be that of Schneierson upon it, and collected and kept the proceeds.

It was not until about November 24, 1943, that either the plaintiff or the defendant discovered Meissel's forgeries and frauds. Until that time both parties had faith in the signatures that purported to be those of Schneierson. Both acted in good faith and without negligence.

On March 2, 1944, the plaintiff demanded from the defendant repayment of the sum of $2,627.69 which the plaintiff had paid in discharge of the prior supposed lien of the defendant upon Schneierson's policy in the defendant company.

It is fairly to be inferred from the case stated that Schneierson, who in truth borrowed nothing and received none of the proceeds of the loans, has received back his policies or is entitled to receive them. The liability to the defendant of the bank that in July, 1942, paid to Meissel the check of the defendant for $2,520 payable to Schneierson upon an indorsement forged by Meissel is not before us. *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 405. *United Security Life Ins. & Trust Co.* v. *Central National Bank,* 185 Penn. St. 586.

The plaintiff cannot recover on the theory of an implied warranty by the defendant of the genuineness of its lien upon the policy. By analogy to a sale of chattels, an assignor of a chose in action has been held to warrant by implication the genuineness of his claim. Williston, Contracts (Rev. ed. 1936) §§ 445, 1162, 1162A. Am. Law Inst. Restatement: Restitution, §§ 15–24. Compare *Sears* v. *Leland,* 145 Mass. 277. But in the present case the defendant was not a vendor or an assignor. Its title, whether good or bad, never passed to the plaintiff. It never even made a demand upon the plaintiff for payment. It merely suffered the plaintiff to pay off what both believed to be a valid prior lien, which the plaintiff desired to discharge for its own purposes. *Ketchum* v. *Bank of Commerce,* 19 N. Y. 499. *Appenzellar* v. *McCall,* 150 Misc. (N. Y.) 897.

The case must be approached from the standpoint of unjust enrichment. The basic principle is stated in Am. Law Inst. Restatement: Restitution, § 1, in these words:

10

"A person who has been unjustly enriched at the expense of another is required. to make restitution to the other." See also *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268, 272, 273; *Hill* v. *Wiley*, 295 Mass. 396, 400; *Jones* v. *Swift*, 300 Mass. 177, 185; *General Exchange Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 365. That statement of principle does not carry us far, for the word "unjustly" remains to be defined or explained. In comment c to that section it is said, "Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." A common instance in which restitution is ordered is where money is paid under a mistake of fact, commonly as in the present case under a mutual mistake of fact. In *Brookline* v. *Crane Construction Co.* 285 Mass. 558, 562, this court said, "It has been held that ordinarily where payments were made under a mutual mistake of fact and no negligence is shown in not discovering the error before the payments are made an action will lie for their recovery." In this case the payment was made to the defendant because both parties were mistaken in thinking that the defendant held a valid prior lien upon the policy, and negligence is expressly negatived by the case stated.

In Williston, Contracts (Rev. ed. 1936) § 1574, which lays down a somewhat similar rule, it is said: "But if, in spite of even a mutual mistake, and a failure of the exact consideration expected, it nevertheless seems to the court that the defendant has such moral right to what he received as to make recovery inequitable, it will be denied. Where A, under a mistaken belief in his liability to B, on direction of the latter pays C a claim which C has against B, A cannot recover the payment from C. If the payment was voluntarily and intentionally paid by A to C to satisfy the latter's claim against B, and C had a genuine claim against B, it seems clear that no recovery should be allowed. C is a purchaser of the money for value and in good faith," it being assumed that taking money in payment of an antecedent debt is a taking for value. See also Am. Law Inst.

Restatement: Restitution, § 14, to the effect that restitution will not be ordered against an innocent defendant who has given value for the benefit received. See also *Jones* v. *Swift*, 300 Mass. 177, 185. In *Ketchum* v. *Bank of Commerce*, 19 N. Y. 499, a swindler had borrowed from the defendant bank on the security of corporate stock. The plaintiff, at the request of the swindler, paid the defendant off, and by order of the swindler obtained the stock from the defendant. The stock turned out to be spurious and invalid. It was held that the plaintiff could not recover from the defendant. In *Merchants' Ins. Co.* v. *Abbott*, 131 Mass. 397, the plaintiff insurers were not liable for a loss because, unknown to them, Abbott, the insured, had intentionally burned the insured mill. Believing themselves liable, the plaintiffs paid the loss to creditors of Abbott to whom he had assigned his claim. This court held that the plaintiffs could not recover from the creditors. See also *Merchants' National Bank* v. *National Bank of the Commonwealth*, 139 Mass. 513, 520, 521. To the same effect are *Fidelity Mutual Life Ins. Co.* v. *Clark*, 203 U. S. 64, *Ball* v. *Shepard*, 202 N. Y. 247, *New York Title & Mortgage Co.* v. *Title Guarantee & Trust Co.* 206 App. Div. (N. Y.) 490, affirmed 237 N. Y. 626, and *Gaffner* v. *American Finance Co.* 120 Wash. 76, 28 Am. L. R. 624. In *Spaulding* v. *Kendrick*, 172 Mass. 71, an embezzler used the stolen money as security for his debt to the defendant, who was ignorant of the source of the money. It was held that the defendant was not bound to restore it. Knowlton, J., said, "One receiving money or negotiable securities in payment of or as security for an existing debt is not bound to inquire where the money or securities were obtained. . . . It has often been decided in this Commonwealth that a pre-existing debt is a valuable consideration for a payment made or a security given on account of it." (Pages 72–73.) See also *Smith* v. *Knapp*, 297 Mass. 466; *Union Central Life Ins. Co.* v. *Glasscock*, 270 Ky. 750, 114 Am. L. R. 373.

The case at bar differs from the cases just discussed primarily in the fact that in this case the defendant had no valid claim against its supposed debtor, Schneierson, or

against anyone, except its claim against Meissel for the forgery. There have been a number of cases in various jurisdictions like the present case in that respect. In general the facts of those cases are stated with sufficient accuracy for our purposes in illustration 7 appended to Am. Law Inst. Restatement: Restitution, § 14, as follows: "Purporting to be the owner of Blackacre A borrows $5,000 from B, forging a note and mortgage in the name of the record owner of Blackacre. A then borrows $10,000 on a similarly forged mortgage of Blackacre from C who pays B $5,000 to discharge B's forged mortgage and to surrender the forged note, and pays A the remaining $5,000." The question in those cases was whether C, as plaintiff, could compel B, as defendant, to restore the $5,000 received by B in discharge of the forged note and mortgage.

In some of those cases importance was attributed to the question whether the money used to pay off the prior supposed lien was the money of the swindler or that of the taker of the later supposed lien. In *Russell* v. *Richard & Thalheimer*, 6 Ala. App. 73, affirmed in *Ex parte Richard & Thalheimer*, 180 Ala. 580, the taker of the later supposed lien handed to the innocent attorney for the swindler the money with which to pay off the earlier supposed lien, and sent the attorney with the swindler to see that it was paid off. The court seized upon that fact as showing that title to the money used had passed to the swindler, and held for that reason that the defendant could not be compelled to restore the money that he had received. In *Walker* v. *Conant*, 69 Mich. 321, the taker of the later supposed lien paid the money to the holder of the earlier supposed lien upon the order of the swindler, but of course for the purpose of clearing off the prior lien. The majority of the court held that title to the money thereby passed to the swindler, just as was held in the Alabama case, and denied restitution.

On the other hand, in another similar case, *Strauss* v. *Hensey*, 9 App. D. C. 541, the taker of the later supposed lien paid off the earlier supposed lien, with the assent of the swindler, in order to make the later lien a first lien. It was held that the money used to pay off the earlier supposed

lien was that of the taker of the later supposed lien and not that of the swindler nor that of the real owner of the property who knew nothing of the transaction. Since the defendant had no lien or claim, and had nothing to lose or surrender, it was held that he did not take the money for value, and he was compelled to restore it. A similar decision was made in *Grand Lodge, Ancient Order of United Workmen* v. *Towne*, 136 Minn. 72, L. R. A. (1917E) 344, in which the court said (pages 77, 78), "The test is whether defendant has a right to retain the money, not whether he acquired possession honestly or in good faith. If the money belongs to plaintiff and defendant can show no legal or equitable right to retain it, he ought in equity and good conscience to pay it over." The court held that the money paid to discharge the defendant's supposed lien was the money of the plaintiff, not that of the swindler, and gave the plaintiff restitution. See also *Smith* v. *Rubel,* 140 Ore. 422, 87 Am. L. R. 644.

In Am. Law Inst. Restatement: Restitution, § 14, the case put in illustration 7, hereinbefore quoted, is answered by the statement that "C is not entitled to restitution from B." To this answer not all the advisers agreed. The illustration seems to assume that the money used to discharge the prior supposed lien is that of the taker of the later supposed lien, but nevertheless the answer is given that the latter is not entitled to restitution. On the other hand, Professor Williston, in his work on Contracts (Rev. ed. [1936], § 1574, note 10), takes the view that the prior supposed lienor must make restitution, "as there was no mortgage or mortgage debt, due from anyone to the defendant, but only the counterfeit appearance thereof." He disposes of the question whose money was paid by saying: "It does not seem material whether the plaintiff paid the defendant with his own hand or by the hand of the borrower [the swindler], so long as the money which was paid was dedicated by the plaintiff to that purpose and the borrower [the swindler] was merely executing a trust when he paid it. That the plaintiff would undoubtedly have lent the whole sum to the fraudulent person, if the latter previ-

ously had paid the prior mortgage from his own funds seems immaterial." This last fact, pronounced immaterial by Professor Williston, was made the ground of a decision in favor of the defendant in *California Pacific Title & Trust Co.* v. *Bank of America National Trust & Savings Association,* 12 Cal. App. (2d) 437, 444, 445.

The fundamental question in the present case is whether the defendant has received money which in equity and good conscience belongs to the plaintiff. If so, the defendant must restore it. Although Meissel in the name of Schneierson requested the payment to the defendant, the plaintiff made the payment primarily to remove a prior supposed lien for the plaintiff's own benefit. The money paid belonged to the plaintiff, and not to Meissel or Schneierson. The fact that the legal title to the money passed to the defendant is not significant. That is true in most instances in which restitution is ordered.

Before the plaintiff even considered making the payment to the defendant, the defendant had already lost its money, although it did not realize the fact. When by the further forgery and fraud of Meissel money was obtained from the plaintiff and the defendant's past loss was thereby repaired at the plaintiff's expense, we think that the plaintiff acquired a right to restitution, unless the defendant suffered such an injurious change of position in the process as to make it substantially a purchaser for value. *Atlantic Cotton Mills,* v. *Indian Orchard Mills,* 147 Mass. 268, 272–274. *Metropolitan Trust Co.* v. *Federal Trust Co.* 232 Mass. 363. Compare *London & County Banking Co. Ltd.* v. *London & River Plate Bank, Ltd.* 21 Q. B. D. 535.

The defendant contends that restitution should be denied because in receiving payment from the plaintiff it lost rights against Meissel. But whether any right against Meissel had practical value or not (and nothing in the record suggests that it had) the defendant is not shown to have lost any such right. The policy loan agreement contained no promise to pay anything, but merely created a lien for the advance made by the defendant. If Schneierson himself had signed the policy loan agreement, he would have come

under no contractual liability to the defendant. *Reynolds* v. *Northwestern Mutual Life Ins. Co.* 298 Mass. 208. *Matter of Hayes,* 252 N. Y. 148. *Manufacturers Trust Co.* v. *Equitable Life Assurance Society,* 244 App. Div. (N. Y.) 357. *Kanatas* v. *Home Life Ins. Co.* 325 Penn. St. 93, 99, 100. *Ford* v. *Mutual Life Ins. Co.* 194 Miss. 519. And even if Meissel, having no authority to sign Schneierson's name to that agreement, were held under a peculiar Pennsylvania rule applicable to simple contracts (*Kroeger* v. *Pitcairn,* 101 Penn. St. 311) to become a party thereto in the place of Schneierson, Meissel likewise would come under no contractual obligation to pay the loan.

As to any possible liability of Meissel to the defendant upon his forged indorsement of the check drawn by the defendant payable to the order of Schneierson, the whole transaction between the defendant and Meissel, purporting to act for Schneierson, took place in the States of New York and Pennsylvania, and was governed by the law of one of those States. In each State the uniform negotiable instruments law has been substantially adopted, including § 18 which provides that "no person is liable on the [negotiable] instrument whose signature does not appear thereon," with an immaterial exception, and § 23 which provides that a forged signature to such an instrument is "wholly inoperative." Consol. Laws of N. Y. Anno. Book 37, §§ 37, 42. Purdon's Penn. Stat. Anno. Title 56, §§ 23, 28. Consequently Meissel was not liable in either State in an action upon the check because of his forgery of the name of Schneierson as indorser.[1] *Gordon* v. *Anthracite Trust Co.* 315 Penn. St. 1, 4. *Bartlett* v. *Tucker,* 104 Mass. 336. *Grafton National Bank* v. *Wing,* 172 Mass. 513, 515. *Mendelsohn* v. *Holton,* 253 Mass. 362, 365. *Agricultural National Bank* v. *Great American Indemnity Co.* 287 Mass. 414, 417.

---

[1] This case does not fall within § 20 of the uniform negotiable instruments law (Consol. Laws of N. Y. Anno. Book 37, § 39; Purdon's Penn. Stat. Anno. Title 56, § 25; G. L. [Ter. Ed.] c. 107, § 42), under which an agent signing a negotiable instrument as such is liable thereon if he was not "duly authorized." *New Georgia National Bank* v. *Lippmann,* 249 N. Y. 307. *Jump* v. *Sparling,* 218 Mass. 324, 326. *Tuttle* v. *First National Bank,* 187 Mass. 533, 535. *Dunham* v. *Blood,* 207 Mass. 512. In this case Meissel did not purport to sign as agent for Schneierson or at all.

But even if Meissel were liable to the defendant upon either the forged policy loan agreement or the forged indorsement, that would be only an optional remedy of the defendant. *White* v. *Madison*, 26 N. Y. 117, 123–125. Its normal remedy against Meissel would remain an action of tort for deceit (*Lemery* v. *Twombly*, 281 Mass. 93, 97; *Weiss* v. *Baum*, 218 App. Div. [N. Y.] 83) or possibly an action upon an implied warranty of genuineness. *White* v. *Madison*, 26 N. Y. 117. *Baltzen* v. *Nicolay*, 53 N. Y. 467. *Moore* v. *Maddock*, 251 N. Y. 420.

The defendant, upon being paid by the plaintiff, gave no release to anyone, but merely cancelled its supposed lien upon the policy. No evidence, even, was surrendered to Meissel. Nothing was done to impair any cause of action that the defendant had against Meissel, except that the defendant received money that, if it could be retained, would make the defendant whole notwithstanding the forgery and fraud. But if the defendant must restore that money to the plaintiff, the defendant would be a loser and would have, unimpaired, its right of action against Meissel for the deceit or breach of warranty. *Pritchard* v. *Hitchcock*, 6 Man. & G. 151. *Aiken* v. *Short*, 1 H. & N. 210, 215. *Petty* v. *Cooke*, L. R. 6 Q. B. 790. Williston, Contracts (Rev. ed. 1936) § 1219. The defendant therefore has lost no right against Meissel, and is not a purchaser for value.

We think that the plaintiff has a superior right to the money, and that the defendant shows no escape from the general rule that one receiving money of another without just right to it must restore it. We follow the decisions in *Strauss* v. *Hensey*, 9 App. D. C. 541, and *Grand Lodge, Ancient Order of United Workmen* v. *Towne*, 136 Minn. 72.

Judgment is to be entered in favor of the plaintiff for $2,627.69, with interest from April 2, 1943, the date of the payment to the defendant, and costs.

*So ordered.*