CESCO MANUFACTURING CORP. *vs.* NORCROSS, INC.

Hampden. April 10, 1979. — June 28, 1979.

Present: HALE, C.J., ARMSTRONG, & DREBEN, JJ.

*Contract*, Modification, Performance and breach. *Damages*, Breach of contract. *Sale*, Contract of sale.

In an action for breach of contract, there was sufficient evidence to warrant findings that, although the parties attempted to resolve their dispute, no modification of the contract was effected and no settlement reached. [840]

Upon appeal from a judgment awarding a plaintiff damages under G. L. c. 106, § 2-709, this court affirmed the judgment without considering the propriety of recovery under that section where the plaintiff's award was clearly proper under c. 106, § 2-708. [841-842]

In an action for breach of a contract for the manufacture of custom display racks for greeting cards, the manufacturer was entitled to damages for both the completed and uncompleted fixtures under G. L. c. 106, § 2-708(2), where, although there was a market for the fixtures, the manufacturer did not have access to it. [842-844]

In an action for breach of a contract for the manufacture of custom display racks for greeting cards, most of which were completed but not assembled when the breach occurred, the manufacturer was entitled under G. L. c. 106, § 2-708(2), to recover as damages the contract price reduced by the amount saved for the labor to assemble, clean and package the completed fixtures, by the cost of manufacture of the uncompleted fixtures, and by the amount recovered on resale. [844]

A clause in a contract for the manufacture of custom display racks for greeting cards, providing that "material fabricated beyond the buyer's releases is at seller's risk" did not, as matter of law, require a construction that holding of goods in anticipation of subsequent release orders was at the seller's risk and that no storage or moving costs could therefore be recovered in an action for breach of the contract. [844-845]

CIVIL ACTION commenced in the Superior Court on October 8, 1974.

The case was heard by *Cross, J.*, on a master's report.

*William M. Shattuck* for the defendant.

*M. Frederick Pritzker (David J. Tracy* with him) for the plaintiff.

DREBEN, J. In this action alleging the breach of a contract for the manufacture of customized display racks for greeting cards, the trial judge found, relying on G. L. c. 106, § 2-709, that the plaintiff is entitled to recover an amount equal to the price as reduced by the net proceeds received from the sale of the undelivered fixtures and the expenses saved in consequence of the buyer's breach, plus an award of incidental damages. We affirm, but under G. L. c. 106, § 2-708(2).

The case was originally a jury action and was referred to a master to make findings "which shall not be final." After filing objections to the master's report, the defendant waived its claim for a jury trial, and the plaintiff moved to confirm the report. The motion judge held that the order of reference controlled, that the master's report was to be treated by the trier of facts as if it were a report under Mass.R.Civ.P. 53(e)(3), 365 Mass. 820 (1974), and that it was admissible as prima facie evidence of the matters found. The matter was tried without a jury, and the trial judge, after hearing testimony, found that the defendant had failed to rebut the findings of the master, and adopted most of the subsidiary findings of fact in the master's original and supplemental[1] reports. He did not accept the ultimate findings of the master and, instead, issued his own.

The facts are derived from the findings of the master and the judge. The plaintiff and the defendant entered into a contract, evidenced by eight purchase orders, for the manufacture of 1,000 customized racks for greeting cards at a price of $114,319. The plaintiff was to ship the goods upon receipt of shipping orders from the defendant

---

[1] The motion judge had recommitted the report for additional findings.

and was to be paid within thirty days after receipt of the fixtures by the defendant. To handle the orders, the plaintiff bought the necessary materials and commenced production. Shipments were made in 1971 and 1972, but some time during the latter year the defendant decided that the fixtures, although manufactured in accordance with its specifications, were too heavy, and no further shipping orders were submitted to the plaintiff. At the end of 1972, 560 of the 1,000 fixtures remained undelivered. Of these, 483 had been manufactured, and sufficient raw materials to make the remaining seventy-seven units were on hand. The judge ruled that while the contract did not specify the time during which the shipping orders had to be placed, a reasonable time was to be inferred under G. L. c. 106, § 2-309(1), and found that such time expired on May 11, 1973. Despite inquiries and correspondence, including a flurry of letters in the summer and fall of 1974, the parties did not resolve the matter, and this action was commenced by the plaintiff in October, 1974. The parties continued to negotiate until March 1, 1975.

The judge found that the plaintiff acted in a commercially reasonable manner and that it sought to minimize damages by ceasing production of the goods. He also found that, although there was a market for fixtures of the kind manufactured for the defendant, the plaintiff did not have reasonable access to this market, and that any efforts by the plaintiff to complete and sell the fixtures would have been unavailing. Prior to July, 1975, the plaintiff ceased doing business and the fixtures were sold in July at public auction for $2,000.

The defendant raises a number of issues on appeal. Since several concern either facts found by the trier of fact or mixed questions of law and fact, we first state briefly the standard to be applied by this court. Contrary to the defendant's contention, we are not in the same position as was the judge with respect to the master's report. We did not hear the testimony at the jury waived trial and are not the judges of the credibility of witnesses.

We cannot set aside the judge's findings of fact unless clearly erroneous, and the findings of a master, to the extent that the judge adopts them, are considered the findings of the judge. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). Findings cannot be reversed "unless the reviewing court on the entire evidence is left with the firm conviction that a mistake has been committed." *New England Canteen Serv. Inc.* v. *Ashley*, 372 Mass. 671, 675 (1977). *Building Inspector of Lancaster* v. *Sanderson*, 372 Mass. 157, 160 (1977).

1. *Modification of the Contract.*

The defendant argues that the judge erred in failing to rule that the contract was modified or that a settlement was reached in June, 1974. It argues that the terms of payment were changed to provide that the defendant would pay for the fixtures after completion rather than after receipt. The letters relied on by the defendant do not compel a finding of modification as a matter of law. Nor can we say that the judge's findings are clearly erroneous. The June 4, 1974, letter of the defendant stated that the units would be billed upon "*completion*"; the plaintiff's reply thanked the defendant for its letter "confirming our verbal agreement to bill you," and enclosed a bill for the remaining 560 undelivered fixtures. The bill was not paid and, in response to inquiries by the plaintiff, the defendant in September wrote "as stated on our purchase orders, we will recognize and pay your invoices for fixtures as they are shipped." A subsequent letter, written on behalf of the plaintiff, stated that the fixtures were *completed* and that, therefore, payment was due. It is apparent that even if the parties had agreed in June that payment was to be made on "completion," they had (and still have on this appeal) totally different views as to what was meant by that term. There is thus no basis for setting aside findings which failed to conclude that a settlement was effected, but found only that the parties sought to resolve the problem.

2. *Applicability of c. 106, § 2-708, to this Action.*

Most of the remaining contentions of the defendant relate to the application of the Uniform Commercial Code, G. L. c. 106[2] (code), to the circumstances of this action. The complaint alleged a breach of contract and sought recovery for the amount set forth in the purchase orders and incidental expenses. No specific code section was cited in the complaint or in the master's report, but the motion judge, the trial judge and the parties on appeal have treated the action as one under § 2-709, an action for the price.

The defendant argues vigorously that an action for the price does not lie. However, even if the defendant is correct in this contention, it would not prevail in this action. The plaintiff's award is clearly proper under § 2-708, and we therefore affirm the judgment on that ground, leaving to another occasion the resolution of the questions posed by a recovery under § 2-709.[3] For the purposes of this appeal we assume, without deciding, that an action for the price is not available. In this event, § 2-709(3) allows recovery under § 2-708. See Comment 7 to § 2-703 of the

---

[2] The sections of the code discussed in this opinion were inserted by St. 1957, c. 765, § 1, and are hereinafter referred to by section number of c. 106.

[3] E.g. (1) Do the goods have to be completed in order to be identified to the contract within the meaning of § 2-709(1)(b)? Compare *Jacobson v. Donnkenny, Inc.,* 4 U.C.C. Rep. Serv. 850 (N.Y. Sup. Ct. 1967), with *Detroit Power Screwdriver* Co. v. *Ladney,* 25 Mich. App. 478, 484-485 (1970), *E-Z Roll Hardware Mfg. Co.,* v. *H & H Prod. & Finishing Corp.,* 4 U.C.C Rep. Serv. 1045, 1047-1048 (N.Y. Sup. Ct. 1968), and *Rowland Meledandi, Inc.* v. *Kohn,* 7 U.C.C. Rep. Serv. 34 (Civ. Ct. N.Y. 1969). (2) Can expenses saved in consequence of the buyer's breach be deducted under § 2-709? See *Beco, Inc.* v. *Minnechaug Golf Course, Inc.* 5 Conn. Cir. Ct. 444, 450-451 (1968). (3) Can the individual circumstances of the seller be considered in determining his ability to resell in view of Comment 3 to § 2-709, appearing in Uniform Commercial Code, 1A U.L.A. (Master ed. 1976), which states that the section substitutes an objective test? See Peters, Remedies for Breach of Contracts Relating to the Sale of Goods under the Uniform Commercial Code: A Roadmap for Article Two, 73 Yale L.J., 199, 249-250 (1963).

Uniform Commercial Code, 1A U.L.A. (Master ed. 1976). Also see Comment 1 to § 2-703, *supra,* which states in part, "This article rejects any doctrine of election of remedy as a fundamental policy and thus the remedies are essentially cumulative in nature and include all of the available remedies for breach," and § 1-106(1) providing that the remedies of the code "shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed." See also Restatement (Second) of Contracts § 392, Comment c (Tent. Draft No. 14, 1979).

Other courts have also affirmed awards under § 2-708 or remanded for additional findings where the cases were originally brought under § 2-709. *Chicago Roller Skate Mfg. Co.* v. *Sokol Mfg. Co.,* 185 Neb. 515, 518 (1970). *Detroit Power Screwdriver Co.* v. *Ladney,* 25 Mich App. 478, 489 (1970). See also *E-Z Roll Hardware Mfg. Co.* v. *H & H Prod. & Finishing Corp.,* 4 U.C.C. Rep. Serv. 1045, 1048 (N.Y. Sup. Ct. 1968).

3. *Applicability of c. 106, § 2-708(2).*

On the facts as determined by the trial judge, the measure of damages under § 2-708(1) is inadequate to put the plaintiff in as good a position as performance would have done, and therefore § 2-708(2) becomes applicable.[4] The trial judge found that although there was a market for

---

[4] Section 2-708 reads as follows:

"(1) Subject to subsection (2) and to the provisions of this Article with respect to proof of market price (section 2-723), the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (section 2-710), but less expenses saved in consequence of the buyer's breach.

"(2) If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this Article (section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale."

the fixtures the plaintiff did not have access to it. Its regular line of business materially differed from that which would be involved in the sale of an odd quantity of greeting card display fixtures, and the judge found that an "attempted sale of the unfinished fixtures," or "completion of the fixtures and attempted sale would have been unavailing." See § 2-704(2). The fact that the fixtures may not be specialty goods is not determinative. There is no reason to limit § 2-708(2) to those situations where the lack of a reasonably accessible market is attributable to the uniqueness of the article. *Timber Access Indus. Co. v. U.S. Plywood-Champion Papers, Inc.*, 263 Or. 509, 525 (1972). But see *Detroit Power Screwdriver Co. v. Ladney*, 25 Mich. App. at 489.

The legislative history of § 2-708(2) shows that it was intended to cover the situation where a seller learns of the buyer's breach while in the process of manufacture. Uniform Laws Annot., U.C.C., 1954 Amendments and Recommendations of the Enlarged Editorial Board to § 2-708 at 14 (1954). White & Summers, Uniform Commercial Code § 7-10, at 228 (1972). Peters, 73 Yale L.J., *supra* at 273. See *Detroit Power Screwdriver Co. v. Ladney*, 25 Mich. App. at 489. Clearly, damages for the uncompleted fixtures fall within the ambit of § 2-708(2).

Damages for the display racks which were manufactured but not assembled, cleaned or packaged are also measured by that section. Undoubtedly, there was some market for these fixtures; but, if the price was insufficient to justify the costs of finding it, the plaintiff could not be expected to do so. *Timber Access Indus. Co. v. U.S. Plywood-Champion Papers, Inc.*, 263 Or. at 525. See also *C.P. Mayer Brick Co. v. D.J. Kennedy Co.*, 230 Pa. 98, 105 (1911); Restatement (Second) of Contracts § 364, Comment c (Tent. Draft No. 14 (1979) (burden generally put on the party in breach to show that a substitute transaction was available). The code does not require economic waste. The judge found that the plaintiff acted in a commercially reasonable manner and sought to mitigate damages. These findings are not clearly erroneous.

4. *Computation of Damages.*

The plaintiff has adequately shown all the elements of damage under § 2-708(2). The purchase orders were intended to cover expected profits and costs incurred by manufacture. Damages were computed by reducing the contract price by the amount saved for the additional labor to assemble, clean and package the 483 units, the cost of manufacturing, assembling and packaging the remaining seventy-seven units, and the amount recovered on resale. Computation of damages on this basis is appropriate under § 2-708(2). *Detroit Power Screwdriver Co.* v. *Ladney*, 25 Mich. App. at 488. *E-Z Roll Hardware Mfg. Co.* v. *H & H Prod. & Finishing Corp.*, 4 U.C.C. Rep. Serv. 1045 (N.Y. Sup. Ct. 1968). See *Jericho Sash & Door Co.* v. *Building Erectors, Inc.*, 362 Mass. 871, 872 (1972); *Daley* v. *J.F. White Contr. Co.*, 347 Mass. 285, 287 (1964); 1 Uniform Laws Annot., U.C.C., Comment 1 to § 1-106(1) of the Uniform Commercial Code, 1 U.L.A. (Master ed. 1976). See also the example and discussion in White & Summers, *supra* at 231; Restatement (Second) of Contracts § 361 (Tent. Draft No. 14, 1979).

5. *Incidental Damages.*

The judge also awarded incidental damages for storage and moving. The findings relating to these expenses were not clearly erroneous and such damages are authorized by §§ 2-708(2) and 2-710. See *Dyecraftsmen, Inc.* v. *Feinberg*, 359 Mass. 485, 490 (1971).

The defendant states, however, that the purchase orders contained a clause providing that "material fabricated beyond the buyer's releases is at seller's risk." The *meaning of the clause*, according to the defendant, is that holding of goods in anticipation of subsequent release orders is at the seller's risk and that no storage or moving costs (i.e., costs of holding) can be recovered.

From the judge's rulings, it is apparent that the defendant sought a far broader effect for the clause at trial than it is now seeking. The judge held that the clause could not be construed so as to require the plaintiff to absorb all

material and production costs if the defendant chose not to authorize the delivery of any of the customized fixtures, and that such a construction would be unconscionable, citing § 2-302(1). He then gave a limited construction to the clause.[5] The defendant does not urge on this appeal that the clause is not unconscionable, nor does it urge that the judge could not limit the clause in some way. In this posture of the appeal, even if it is now open to the defendant to argue for its own limited construction of the clause, there is no reason to review the ruling of unconscionability or the limitation which was imposed on the clause by the trial judge. Suffice it to say, the construction of the clause urged by the defendant is not a natural one and on this record is not required as a matter of law.

6. *Interest.*

The only remaining issue raised by the defendant is that interest should run from the date of the plaintiff's writ and not from the date of the breach. General Laws c. 231, § 6C, disposes of this argument in the plaintiff's favor.

*Judgment affirmed.*

---

[5] The trial judge construed the clause to mean that the defendant would not be exposed to liability if the plaintiff engaged in production beyond the scope of the purchase orders because of plaintiff's expectations of future purchase orders. In the commercial setting of the parties, such expectations were probable. At one time, albeit after the contract was formed, the defendant advised the plaintiff that it expected a $250,000 expenditure for the plaintiff's fixtures.