**Kenneth B. KROHN, Plaintiff-Appellant,**

v.

**HARVARD LAW SCHOOL, et al.,**
**Defendants-Appellees.**

No. 76–1445.

United States Court of Appeals,
First Circuit.

Argued Jan. 4, 1977.

Decided April 6, 1977.

---

1005, 90 S.Ct. 559, 24 L.Ed.2d 497; *United States v. Albright*, 4 Cir., 1968, 388 F.2d 719.

Kenneth B. Krohn, pro se.

John M. Harrington, Jr., Boston, Mass., with whom George Marshall Moriarty, John H. Mason, and Ropes & Gray, of Boston, Mass., were on brief, for defendants-appellees.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, BOWNES, * District Judge.

BOWNES, District Judge.

Plaintiff-appellant appeals from the dismissal of his civil rights suit against Harvard Law School in which he alleged that the rejection of his application to the defendant law school was the result of an arbitrary selection process which violated his rights to due process and equal protection of the laws under the Fourteenth Amendment of the United States Constitution.

Appellant brought his action under 42 U.S.C. § 1983 alleging jurisdiction pursuant to 28 U.S.C. § 1343.

In order to state a cause of action in a section 1983 suit, the plaintiff must show that the alleged civil rights violation was accomplished "under color of any statute, ordinance, regulation, custom, or usage" of the Commonwealth of Massachusetts. We agree with the district court that the plaintiff did not establish "state action" in this case and affirm the dismissal of plaintiff's section 1983 cause of action.

Plaintiff-appellant bases the presence of the requisite "state action" on two major theories: first, that Harvard University is a public institution by virtue of its historic connections with the Massachusetts Bay Colony and the supposed control exercised over it in the early days of the Commonwealth of Massachusetts; and, second, that there presently exists a sufficient nexus between the Commonwealth and Harvard Law School to imbue the law school's activities with "color of state law."

While appellant has written a fascinating historical review of the founding of Harvard University, we agree with the district court that he has failed to show a sufficient present day relationship between Harvard and the Commonwealth to treat the school as a public institution subject to federal jurisdiction in a 42 U.S.C. § 1983 suit. To hold otherwise would serve only to disrupt the less anciently established balance of rights and duties Harvard assumes as a private educational institution in Massachusetts. *See, e. g., Grueninger v. President and Fellows of Harvard College,* 343 Mass. 338, 178 N.E.2d 917 (1961) (Harvard is entitled to raise the limited defense of charitable immunities); *Attorney General v. President and Fellows of Harvard College,* 350 Mass. 125, 137, 213 N.E.2d 840, 847 (1966) (some gifts to Harvard are "public charitable trusts in private educational hands"). This court will not enter into a historical debate with appellant; suffice it to say that Harvard has been for at least one hundred years and continues to be treated as a private educational institution in the whole range of its legal and educational relations and activities by both the private and public sectors in Massachusetts. It is considered by all reasonable persons to be a private educational institution and "[w]hile legitimate public belief is scarcely enough to determine that the acts of an avowedly private institution are state action, it is a factor to be weighed in the scales . . . ." *Grafton v. Brooklyn Law School,* 478 F.2d 1137, 1143 (2d Cir. 1973). As a private entity, Harvard Law School is not subject to suit brought under 42 U.S.C. § 1983. *Civil Rights Cases,* 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883).

Plaintiff further alleges that the defendant's refusal to admit him to the law school was, by virtue of the existence of the State Supreme Judicial Court's rule requiring all bar applicants to establish their successful completion of a course of study at a law school, an activity "so intertwined with the state as to be subject to the standards of

* Of the District of New Hampshire, sitting by designation.

lawful activity imposed upon public institutions." *Berrios v. Inter Am. University,* 535 F.2d 1330, 1332 (1st Cir. 1976). *See Burton v. Wilmington Pkg. Auth.,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961). We reject plaintiff's contention. *Grafton, supra,* 478 F.2d 1137.

■ In order to determine whether or not "private action" is "so intertwined with the state" we must look to

whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

*Accord, Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

■ This court has held, in another context, that the receipt by a private university of state financial assistance through tax exemptions and a student aid program, regulation of the university by a public accreditation council and the authority of that council to oversee university disciplinary procedures, either individually or together, were insufficient attributes of governmental involvement to render the university's disciplinary proceedings "state action" for section 1983 purposes. *Berrios, supra,* 535 F.2d at 1332. Here, plaintiff has alleged no more than the Supreme Judicial Court rule, and

the mere fact that a school is giving instruction the successful completion of which affords one, and the more generally desired, path to the taking of a state bar examination, does not make its functions any more governmental than the imparting of the pre-legal instruction which is also required, . . . . *Grafton, supra,* 478 F.2d at 1141. (Footnote omitted.)

There is not, in this case, an intertwining of state and private action sufficient for a section 1983 cause of action.

■ Further, it is clear that the mere offering of an education, regulated by the State, does not imbue defendant's activities with sufficient "public interest" to render defendant's activities governmental in nature. *See Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). The Supreme Court has said:

It is difficult to imagine a regulated activity more essential or more "clothed with the public interest" than the maintenance of schools, yet we stated in *Evans v. Newton,* 382 U.S. 296, 300, 86 S.Ct. 486, 489, 15 L.Ed.2d 373 (1966):

"The range of governmental activities is broad and varied, and the fact that government has engaged in a particular activity does not necessarily mean that an individual entrepreneur or manager of the same kind of undertaking suffers the same constitutional inhibitions. While a State may not segregate public schools so as to exclude one or more religious groups, those sects may maintain their own parochial educational systems." *Jackson, supra,* 419 U.S. at 354 n. 9, 95 S.Ct. at 455 n. 9.

■■ Finally, plaintiff has failed to allege any connection whatsoever between defendant's allegedly discriminatory admissions policy and any activity on the part of the Commonwealth. In order to subject the activities of private entities to a section 1983 claim, a plaintiff must allege that the acts of the state are in some way involved in the private discriminatory conduct in that they were "intended either overtly or covertly to encourage discrimination," *Moose Lodge, supra,* 407 U.S. at 173, 92 S.Ct. at 1972, or that they affirmatively promoted the discriminatory conduct. *See id.* at 175 n. 3, 92 S.Ct. 1965. Here, plaintiff alleges no nexus whatsoever between the Supreme Judicial Court rule or any other rule, regulation or conduct on the part of the Commonwealth of Massachusetts and defendant's admissions policy. Therefore, plaintiff has not stated a cause of action against the defendant under 42 U.S.C. § 1983.

We have carefully read plaintiff's complaint in light of the Supreme Court's

recent decisions concerning 42 U.S.C. § 1981 which provides in part that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."

In *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the Court held that section 1981 prohibits private, commercially operated schools from denying admission to prospective students on the basis of race. It also decided that section 1981 forbids racial discrimination against white persons as well as against non-whites. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

In the instant case, plaintiff has alleged too few facts for this court to infer that he claims that the denial of his application was based upon racial discrimination. He alleges, upon information and belief, that in its selection process the defendant "routinely accords preference to members of certain racial minority groups (notably blacks), women, young applicants, applicants from wealthy families or with personal or political 'connections' . . . ," paragraph 17, Verified Amended Complaint, and that the admissions process is "biased by considerations of race, age, sex and place of origin." Paragraph 33D, Verified Amended Complaint. The thrust of these claims is not to allege "reverse discrimination" in the sense that plaintiff's application was denied due to racial bias,[1] but to show the preference accorded "currently fashionable or exotic characteristics wholly unrelated to academic or professional merit or aptitude" and to demonstrate that "few if any places are awarded primarily on the basis of academic merit." Paragraph 17, Verified Amended Complaint. Plaintiff concedes that he "does not know whether he was discriminated against on the basis of his age, religion or race . . . ."

We find that plaintiff has not claimed that he was denied the opportunity to contract with the defendant because of his race. His claim is based on an assumption that, because of his academic credentials, he is entitled to, but has been denied, the opportunity to enter Harvard Law School. This does not state a cause of action under 42 U.S.C. section 1981.

The dismissal of the section 1983 claim is affirmed; any claim the plaintiff may have under § 1981 should be dismissed without prejudice.

*So ordered.*

---

1. The question of whether or not "reverse discrimination" violates the rights of nonminority group members under the Equal Protection Clause of the Fourteenth Amendment is presently pending before the Supreme Court. *Regents of University of California v. Bakke,* —— U.S. ——, 97 S.Ct. 1098, 51 L.Ed.2d 535 (1977).