# United States Court of Appeals
## For the First Circuit

No. 13-1769

JOE KLUNDER,

Plaintiff, Appellant,

v.

BROWN UNIVERSITY; RUTH SIMMONS, in her individual and
official capacities; CARLA HANSEN, in her individual and
official capacities; MARGARET KLAWUNN, in her individual
and official capacities; TERRY ADDISON, in his individual
and official capacities; J. ALLEN WARD, in his individual
and official capacities; RICHARD BOVA, in his individual and
official capacities; PHILIP GRUPPUSO, in his individual and
official capacities; DAVID KERTZER, in his individual and
official capacities; YOLANDA CASTILLO-APPOLLONIO, in her
individual and official capacities,

Defendants, Appellees.

ROBERT ENOS, in his individual and official capacities,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

Leon A. Blais, with whom Blais & Parent, was on brief for
appellant.
Jeffrey S. Michaelson, with whom Michaelson & Michaelson, was
on brief for appellees.

February 3, 2015

**TORRUELLA, Circuit Judge.** Plaintiff-Appellant Joe Klunder was removed from Brown University[1] and suspended for three semesters after a number of students and staff submitted complaints regarding Klunder's behavior. In response, Klunder filed an eleven-count complaint against Brown University and numerous individuals associated with Brown and its police department (collectively, "Appellees"). At the heart of Klunder's complaint are allegations that Appellees' handling of his disciplinary proceeding and his removal from campus violated both his constitutional rights (actionable through 42 U.S.C. § 1983) and Rhode Island state law. The district court ultimately entered judgment in favor of Appellees on all eleven claims, and Klunder now appeals. He contends that the district court erred by: (1) finding that Brown University was not a state actor subject to suit under 42 U.S.C. § 1983; (2) allowing Appellees' motion to amend their answer to include a statute of limitations defense; and (3) ignoring a Rhode Island tolling statute which would have brought Klunder's claims within the applicable three-year statute of limitations. Finding all of Klunder's arguments meritless, we affirm.

---

[1] The corporation's full legal name is "Brown University in Providence in the State of Rhode Island and Providence Plantations," but we will refer to it as it is commonly referred -- as either "Brown" or "Brown University."

## I.  Background

**A.  Factual background**

In the fall of 2003, Klunder traveled from his family home in California to Rhode Island, where he began attending Brown as a freshman.  The transition was not an easy one for Klunder, who claims to have struggled with underlying emotional conditions, the effects of his medications, and a perceived culture clash between his conservative upbringing in California and the liberal university setting at Brown.

During the spring semester of 2005, Brown began to receive a number of complaints about Klunder's behavior towards students and staff.  First, Carla Hansen, an Associate Dean of Student Life at Brown, reported an incident with Klunder in her office in April 2005.[2]  According to her report, she had a number of concerns about the interaction and was uncomfortable with Klunder's remarks about her physical appearance and with his intrusive questions about the nature of her physical relationship with her same-sex partner.[3]

Then, in May of 2005, two Brown staff members reported encountering Klunder in a restaurant.  Both women said they felt

---

[2]  As Associate Dean of Student Life, Dean Hansen approved academic extensions.  She is also a licensed social worker with a private psychotherapy practice.

[3]  According to Dean Hansen, Klunder said he knew "what it is like when I am kissing my girlfriend, and I feel my chest against her breasts, but what does it feel like for you with your girlfriend?"

uncomfortable when Klunder interrupted their conversation to ask if they were having "man trouble." Klunder then reportedly volunteered unsolicited information about a drunken phone call he had made recently to a former girlfriend during which he evaluated her skill at kissing. One of the staffers reported that this was her second run-in with Klunder, who had made inappropriate comments on the previous occasion as well.

After receiving these complaints, Associate Dean of Student Life Terry Addison wrote to Klunder to notify him that the complaints would be the subject of a hearing upon Klunder's return to campus in the fall of 2005. Klunder, however, elected not to return that fall due to unspecified family matters. He eventually returned to Brown in the fall of 2007, at which point Brown began to receive new complaints about Klunder's behavior.

One student employee of Brown reported that Klunder approached her to describe, unsolicited, his views on the proper subordinate role of women and a maneuver he used to trick women into making out with him. Then, on September 10, 2007, four students reported having a particularly disturbing conversation with Klunder. According to their reports, Klunder approached the unfamiliar students and began by complaining about "that black [fraternity] guy" who had been particularly noisy the night before. After admitting to using methamphetamine, cocaine, and Adderall, Klunder allegedly stated that he did not think that he could

control himself if disturbed by noisy students again. He hypothesized that it might be strange to return to campus after a suspension if he were to stab a fellow student, but that he could plead diminished capacity to avoid serious criminal charges. Klunder informed the group that he had repeatedly "beat the shit" out of his father, and he proceeded to advise the students that if they shot someone in California, they should do it on their own property, or drag the body there after the fact, in order to get a reduced punishment.

After receiving these additional complaints, Dean Addison sent Klunder a second notice saying that new complaints had been received and that an investigation would take place. At the same time, Margaret Klawunn, the Associate Vice President for Campus Life/Dean for Student Life, issued an emergency letter stating that to ensure the safety of students and the community, Klunder would be barred from campus effective September 12, 2007, on an interim basis.

At a meeting with Brown administrators on September 12, 2007, Klunder was told of his removal from campus. Dean Addison escorted Klunder to his dormitory so he could pack his things. Afterwards, the pair were joined by Sergeant Robert Enos of the Brown University Police Department and Dean J. Allen Ward. Klunder alleges that he was ordered into the campus police vehicle driven by Enos and was taken to a nearby hotel. He claims that Dean Ward

-6-

told him that he could not return to campus or to a public street neighboring Brown, and instead that he should remain at the hotel until he could fly home the next day.

Brown combined the complaints against Klunder from 2005 and 2007 and scheduled a non-academic disciplinary hearing for November 15, 2007. Klunder flew back to Rhode Island for the hearing where he was provided with a non-lawyer advisor to represent him and a package of materials that would constitute the evidence against him. At the hearing, Klunder had the opportunity to present evidence and to call and question witnesses. He provided a written opening statement but chose not to present any witnesses in his defense. After the hearing, the hearing officer provided Vice President Klawunn with his decision. Vice President Klawunn adopted this recommendation and rendered a formal decision finding that Klunder had violated Brown's Standards of Conduct and suspending him for three semesters. Klunder appealed to Brown's Provost, who affirmed the findings and suspension.[4]

## B. Procedural background

On October 5, 2010, Klunder filed an eleven-count complaint in the district court of Rhode Island. He alleged, among other things, that Brown was a person acting under color of state law within the meaning of 42 U.S.C. § 1983, that Appellees were

---

[4] After serving his suspension, Klunder returned to Brown and earned his diploma.

liable for failing to train or supervise its employees, and that Appellees violated Klunder's constitutional rights under the First, Fourth, Sixth, and Fourteenth Amendments of the U.S. Constitution. Other allegations included claims of civil conspiracy, breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, false arrest, false imprisonment, negligence, and breach of the duty of confidentiality and loyalty.

The parties subsequently filed cross-motions for summary judgment as to Count I of the complaint, which called for a declaratory judgment that Brown qualified as a state actor under § 1983. On July 13, 2011, the district court denied Klunder's motion and granted Appellees' motion for summary judgment in part. The court reasoned that Brown University is not a state actor but that it could not grant summary judgment in its entirety because there was insufficient information to determine whether the Brown University police force was acting under color of law, thus bringing it under the ambit of § 1983.

On October 16, 2012, Appellees filed a motion to dismiss eight of the eleven counts, primarily on statute of limitations grounds. Because Appellees had overlooked the statute of limitations defense when preparing their answer to the complaint, the motion to dismiss was followed three days later by Appellees' motion to amend the answer to include a statute of limitations

defense.  Over Klunder's objections, the district court granted the motion to amend.  On November 27, 2012, the district court granted Appellees' motion to dismiss two of the eight counts -- Counts VIII and IX, which alleged false arrest and false imprisonment, respectively -- on statute of limitations grounds.

Finally, on May 9, 2013, after additional discovery and substantial briefing from both parties, the district court granted Appellees' motion for summary judgment as to all remaining counts. In a written order, the court explained that Klunder's remaining § 1983 claims, his civil conspiracy claim, and his common law breach of the duty of confidentiality and loyalty claim were not timely as they were filed outside of the three-year statute of limitations period.  The court also dismissed Klunder's claim of negligent or intentional infliction of emotional distress, as well as his breach of contract claim, reasoning that Klunder's allegations were not properly supported and that Klunder had failed to demonstrate entitlement to relief.  As to Klunder's remaining claims of negligence and breach of the covenant of good faith and fair dealing, the district court deemed them waived, noting that Klunder had failed to respond to Appellees' arguments and failed to present any argument of his own as to those claims.

The district court denied Klunder's motion for reconsideration on June 4, 2013, and this timely appeal followed.

## II. Discussion

### A. Brown and § 1983

Klunder first challenges the district court's grant of summary judgment on the ground that Brown University is not a state actor subject to federal jurisdiction under § 1983.[5] We review this ruling de novo, "scrutiniz[ing] the facts in the light most agreeable" to Klunder and drawing all reasonable inferences in his favor. Foote v. Town of Bedford, 642 F.3d 80, 82 (1st Cir. 2011). "We will affirm only if the record, so viewed, discloses that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Santiago v. Puerto Rico, 655 F.3d 61, 68 (1st Cir. 2011).

Section 1983 "provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State . . . . '" Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) (quoting § 1983)). "To make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of

---

[5] The district court never ruled on whether the Brown University Police Department qualified as a state actor, instead disposing of those allegations through the statute of limitations. We likewise decline to make that determination.

federally secured rights ensued." Santiago, 655 F.3d at 68. It is the "color of state law" prong that is at issue here.

For Brown to have acted under color of state law, its "actions must be 'fairly attributable to the State.'" Estades-Negroni, 412 F.3d at 4 (quoting Lugar, 457 U.S. at 937). "In other words, it must be fair to characterize [Brown] as [a] state actor[]." Id. While there is no dispute that Brown is a private entity, a private party can -- in "rare circumstances" -- be deemed a state actor for § 1983 purposes if one of three tests is met. Id. at 4-5.

The first test is the state compulsion test. Under this test, "a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" Id. at 5 (alteration in original) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). The second test -- the nexus/joint action test -- deems a private party a state actor "where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Id. (alterations in original) (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir. 1999)). Finally, under the public function test, "a private

party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been 'traditionally the exclusive prerogative of the State.'" Id. (quoting Blum, 457 U.S. at 1005).

Though Klunder never references it by name, his arguments implicate the public function test. Focusing almost entirely on Brown's charter, Klunder argues that Brown is a body politic which was delegated governmental power and authority by England, and thus qualifies as a state actor.[6]

Klunder is correct that Brown's charter defines it as a "body corporate and politic," but he misunderstands the term's import. Black's Law currently defines a body politic as "[a] group of people regarded in a political (rather than private) sense and organized under a common governmental authority." Black's Law Dictionary 198 (9th ed. 2009). However, when Brown's charter was established in the late 1700s, the "phrase was used to mean corporations, both private and public." Will v. Mich. Dep't of State Police, 491 U.S. 58, 69 (1989); see also Trs. of Dartmouth Coll. v. Woodward, 17 U.S. (4 Wheat.) 518, 524, 657, 701 (1819) (finding that Dartmouth College was a private corporation despite being defined in its charter as a "body corporate and politic").

---

[6] We need not address the question of whether actions by colonial England could establish that an institution is a "state actor" under the United States Constitution because Klunder's arguments about Brown's charter fail on their own terms.

Indeed, Rhode Island still interprets the term to include private corporations.  See, e.g., Doe v. Gelineau, 732 A.2d 43, 45 n.2, 46 & n.5 (R.I. 1999) (establishing the Roman Catholic Bishop of Providence as a business corporation that "subsists as a body politic under a special denomination, which is regarded in law as having a personality and existence distinct from that of its several members"); Pardey v. Boulevard Billiard Club, 518 A.2d 1349, 1354 (R.I. 1986) ("[A]rtificial [persons] are such as are created and devised by human laws for the purposes of society and government, which are called corporations or bodies politic." (quoting 1 Blackstone, Commentaries *123)); Wing v. Slater, 35 A. 302, 303 (R.I. 1896) (stating that a corporation is a body politic).

While we assume arguendo that a body politic may be a state actor, we agree with the district court that the designation is not determinative but rather that "the facts and circumstances particular to the specific corporate entity" determine whether a corporate body politic is a private corporation or a state actor subject to federal jurisdiction under § 1983.  See also Kennelly v. Kent Cnty. Water Auth., 89 A.2d 188, 191 (R.I. 1952) ("Notwithstanding that [the statute creating the Kent County Water Authority] describes the board as a 'body politic,' . . . and declares that in exercising its powers it 'will be performing an essential governmental function,' such language by itself is not

-13-

effective to clothe the Authority with the distinguishing characteristics of a municipal or quasi-municipal corporation.").

Here, the facts and circumstances make clear that Brown University is not performing a public function that has been "traditionally the exclusive prerogative of the State," thus transforming it into a state actor. Brown's charter grants Brown "full liberty, power, and authority . . . to found a College or University within [Rhode Island], for promoting the liberal arts and universal literature." Brown University, The Charter of Brown University with Amendments and Notes 8 (1945), available at http://www.brown.edu/about/administration/corporation/sites/brown.edu.about.administration.corporation/files/uploads/charter-of-brown-university.pdf (hereinafter "Brown's Charter"). Education, especially secondary and collegiate education, is not, and never has been, exclusively maintained by the state. See Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (holding that the education of maladjusted high school students, although a public function, is not the exclusive prerogative of the state); Berríos v. Inter Am. Univ., 535 F.2d 1330, 1333 (1st Cir. 1976) ("Higher education is not generally regarded as exclusively a function 'traditionally associated with sovereignty.'"); cf. City of Pawtucket v. Sundlun, 662 A.2d 40, 50 (R.I. 1995) ("It is thus clear that the General Assembly's plenary and exclusive power over public education in

Rhode Island has not changed since the adoption of the State Constitution in 1842." (emphasis added)).

And while Klunder focuses on Brown's authority to legislate, to "regulate, order, and govern the same," Brown's Charter at 8, and to "make, enact and publish all such laws, statutes, regulations, and ordinances, with penalties," id. at 14, this authority is clearly limited to Brown's self-governance to maintain itself as an educational institution. For example, a full reading of the paragraph from which Klunder selectively quotes makes obvious that the phrase "the same" in Brown's authority to "regulate, order, and govern" refers to Brown's "full liberty, power, and authority . . . to found a College or University within this Colony, for promoting the liberal arts and universal literature." See id. at 8. Moreover, while the charter permits Brown to convene "two branches" in order to "make, enact and publish all such laws, statutes, regulations, and ordinances, with penalties," id. at 13-14, this ability is limited to "the successful instruction and government of said College or University," id. at 14.

Thus, contrary to Klunder's assertions, the charter does not broadly delegate legislative responsibility to Brown. Cf. Dartmouth Coll., 17 U.S. at 631-32, 636, 638 (finding that Dartmouth's ability to govern itself and act to promote its educational purpose did not render it a public institution).

Klunder's related argument that Brown's disciplinary system was a delegation of judicial governmental functions is likewise faulty. As a general matter, private schools are run privately, without governmental interference in the schools' internal administration. See Asociación de Educación Privada de P.R., Inc. v. García-Padilla, 490 F.3d 1, 15 (1st Cir. 2007) ("Thus, Rule 11 interferes with autonomous decisionmaking by private schools and intrudes upon their freedom to pursue their academic objectives without interference from the government."); see also Zelman v. Simmons-Harris, 536 U.S. 639, 701 n.9 (2002)(Souter, J., dissenting) (dissenting on a separate issue and noting -- without disagreement by the majority -- that private schools "are autonomously managed without any interference from the . . . State"). We see no reason that this autonomy should exclude internal disciplinary measures and proceedings. See Krohn v. Harvard Law Sch., 552 F.2d 21, 24 (1st Cir. 1977) (finding that the receipt of state financial assistance, the regulation by a public accreditation council, and the authority of that council to oversee disciplinary procedures "were insufficient attributes of government involvement to render the university's disciplinary proceedings 'state action' for section 1983 purposes"); see also Doe v. Heck, 327 F.3d 492, 523 (7th Cir. 2003) ("The right of parents to discipline their children . . . preclude[s] state officials from interfering with the right of parents . . . to delegate the

-16-

authority to [discipline their children] to private school officials . . . ."); Albert v. Carovano, 851 F.2d 561, 571 (2d Cir. 1988) ("Hamilton's decision to suspend the appellants 'ultimately turn[ed] on . . . [a] judgment made by [a] private part[y] according to professional standards that were not established by the state.' It thus cannot be state action." (alterations in original) (internal citation omitted)).

Thus, Brown's discipline of Klunder in no way qualifies as judicial delegation by the state.

Because neither private education, corporate self-governance, nor internal discipline qualifies as state action, and because there has been no delegation of any governmental functions to Brown -- either at the time of Brown's charter or in the last 250 years -- Brown cannot be classified as a private party performing a public function that has been "'traditionally the exclusive prerogative of the State.'" See Estades-Negroni, 412 F.3d at 5 (quoting Blum, 457 U.S. at 1005). With no action "'fairly attributable to the State,'" Brown is not acting under color of state law, and thus Klunder has failed to show that Brown is subject to federal jurisdiction under § 1983. See id. at 4 (quoting Lugar, 457 U.S. at 937).

This conclusion is supported by our decision in Krohn, which, contrary to Klunder's assertions, is highly analogous. In Krohn, we were confronted with the question of whether Harvard Law

School was subject to federal jurisdiction under § 1983.  Finding

that it was not, we held that

> [Krohn] has failed to show a sufficient present day relationship between Harvard and the Commonwealth to treat the school as a public institution subject to federal jurisdiction in a 42 U.S.C. § 1983 suit.  To hold otherwise would serve only to disrupt the less anciently established balance of rights and duties Harvard assumes as a private educational institution in Massachusetts. . . .  Harvard has been for at least one hundred years and continues to be treated as a private educational institution in the whole range of its legal and educational relations and activities by both the private and public sectors in Massachusetts.  It is considered by all reasonable persons to be a private educational institution . . . .

Krohn, 552 F.2d at 23.  Like Harvard's relationship with

Massachusetts, Brown's relationship with Rhode Island in no way

suggests that Brown should be treated as a public institution.

Brown was founded by private citizens and with private funds, and,

like Harvard, has historically been and presently is treated as a

private educational institution by both the private and public

sectors.  Moreover, Harvard, like Brown, is defined in its charter

as a body politic.  Compare The Charter of 1650, in The Development

of Harvard University since the Inqauguration [sic] of President

Eliot, 1869-1929 6 (Samuel Eliot Morison ed., 1930), available at

http://abel.harvard.edu/history/charter/index.html ("one body

politique and Corporate in Lawe"), with Brown's Charter at 7 ("one

body corporate and politic").

-18-

Seeing no meaningful distinction between Brown in the present case and Harvard in Krohn, we agree with the district court that Brown University is not a state actor subject to federal jurisdiction under § 1983. Brown's motion for partial summary judgment was properly granted.

## B. The Statute of Limitations

The district court disposed of the remainder of Klunder's claims[7] on statute of limitations grounds. On appeal, Klunder raises two arguments. First, he alleges that the district court improperly granted Appellees' motion to amend the answer to include a statute of limitations defense. Second, he argues that even if the answer was properly amended, his claims were not time barred due to the tolling provision in Rhode Island General Laws section 9-1-18. We address each in turn.

### 1. The Motion to Amend

We review the district court's decision to grant Appellees' motion to amend its answer to include the statute of

---

[7] Klunder's brief "asks that this court vacate all judgments of dismissal," which would seemingly include Count V (Breach of Contract), Count VI (Breach of the Covenant of Good Faith and Fair Dealing), Count VII (Infliction of Emotion Distress), Count X (Negligence), and Count XI (Breach of the Duty of Confidentiality and Loyalty). The district court granted Brown's motion for summary judgment on Counts V, VI, VII, and XI (with respect to the statutory component) based on the merits and on Count X based on waiver. Klunder's brief makes no arguments as to these counts, so to the extent he intended to appeal those rulings, his claims are waived. See Wei Feng Liu v. Holder, 714 F.3d 56, 61 (1st Cir. 2013) ("[Petitioner] presents no argument as to why the decisions below were in error, and the issue is thus waived.").

limitations defense for abuse of discretion. <u>Interstate Litho Corp.</u> v. <u>Brown</u>, 255 F.3d 19, 25 (1st Cir. 2001). That decision "will be left untouched" so long as "'the record evinces an arguably adequate basis for the court's decision.'" <u>Juárez</u> v. <u>Select Portfolio Servicing, Inc.</u>, 708 F.3d 269, 276 (1st Cir. 2013) (quoting <u>Hatch</u> v. <u>Dep't for Children</u>, 274 F.3d 12, 19 (1st Cir. 2001)).

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings, and it instructs courts to "freely give leave" to amend. Fed. R. Civ. P. 15(a)(2). As the Supreme Court explained,

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

<u>Foman</u> v. <u>Davis</u>, 371 U.S. 178, 182 (1962); <u>see also</u> <u>Interstate Litho Corp.</u>, 255 F.3d at 25; <u>Acosta-Mestre</u> v. <u>Hilton Int'l of P.R., Inc.</u>, 156 F.3d 49, 51 (1st Cir. 1998).

We find no error in the district court's decision to permit the amendment. In reviewing a district court's decision on whether or not to grant an amendment, we routinely focus our analysis on the prejudice to the non-moving party. <u>See</u>, <u>e.g.</u>, <u>Interstate Litho Corp.</u>, 255 F.3d at 25-26 ("[Plaintiff] . . . does

-20-

not identify any prejudice . . . . Indeed, [Plaintiff's] trial preparation on the merits issues could hardly have been much different . . . ."); Hayes v. New Eng. Millwork Distribs., Inc., 602 F.2d 15, 19 (1st Cir. 1979) ("[C]ourts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party . . . ."). Most often, this prejudice takes the form of additional, prolonged discovery and a postponement of trial. See, e.g., Acosta-Mestre, 156 F.3d at 52 ("[T]he prejudice to Hilton resulting from a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial strategy and tactics . . . fully support the district court's ruling [to deny a motion for leave to amend]."); Stepanischen v. Merchs. Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983) ("[T]he addition of new claims would likely have required additional discovery and caused further delay."); Johnston v. Holiday Inns, Inc., 595 F.2d 890, 896 (1st Cir. 1979) (affirming denial of motion to amend where five years had passed since the complaint was filed, a memorandum opinion and judgment had already been entered, and the defendants "would be prejudiced by the difficulty and expense required in locating essential witnesses for trial").

Here, Klunder fails to establish prejudice. Though he claims that "knowledge of the defense of statute of limitations would have impacted Plaintiff's discovery strategy," he fails to

-21-

explain how.  To the contrary, the record suggests the opposite.

At the time the motion to amend was filed, discovery was ongoing.

Klunder had only taken two depositions, and subsequently took

others, and thus had ample opportunity -- almost two months -- to

explore the statute of limitations question.  Additionally, nothing

prevented Klunder from utilizing the various discovery tools

afforded to all litigants -- interrogatories, requests for

production of documents, subpoenas, etc. -- to obtain information

to rebut the defense.  And, if Klunder really did feel that he

lacked sufficient time to explore the issue, he could have sought

extensions of the discovery and summary judgment deadlines.  That

he declined to employ any of these options is his own decision and

not the fault of Brown.

Given Rule 15's liberal policy and the lack of
demonstrable prejudice to Klunder, we cannot say that the district
court abused its discretion in granting the motion to amend.[8]

---

[8]  Though the decision on whether or not to grant a motion to amend
is a case-specific, fact-based determination, it is telling that
when faced with this question in similar circumstances, a number of
our sister circuits have also found it proper for the district
court to grant a motion to amend to include a statute of
limitations defense.  See Bylin v. Billings, 568 F.3d 1224, 1230
(10th Cir. 2009) (finding that the district court did not abuse its
discretion in permitting the amendment to include a statute of
limitations defense where plaintiffs "received adequate notice of
the statute-of-limitations defense and had ample opportunity to
respond"); Bireline v. Seagondollar, 567 F.2d 260, 262 (4th Cir.
1977) ("We find no clear error in the district court's allowance of
defendants' motion to amend their answer to assert the applicable
statute of limitations."); Emich Motors Corp. v. Gen. Motors Corp.,
229 F.2d 714, 717-18 (7th Cir. 1956) (finding no abuse of

-22-

## 2. The Tolling Statute

Klunder next argues that even if Appellees' answer was properly amended to include the statute of limitations defense, the defense did not bar his claims due to the tolling provision in Rhode Island General Laws section 9-1-18. We review the district court's decisions on this issue de novo. See Montalvo v. González-Amparo, 587 F.3d 43, 46 (1st Cir. 2009); López-González v. Municipality of Comerío, 404 F.3d 548, 551 (1st Cir. 2005).

Section 9-1-18 provides, in relevant part, that

> [i]f any person against whom there is or shall be cause for any action, as enumerated in this chapter, in favor of a resident of the state, shall at the time the cause accrues be outside the limits of the state, or being within the state at the time the cause accrues shall go out of the state before the action is barred by the provisions of this chapter, and does not have or leave property or estate in the state that can be attached by process of law, then the person entitled to the action may commence the action, within the time before limited, after the person has returned into the state in such a manner that an action may, with reasonable diligence, be commenced against him or her by the person entitled to the action . . . .

R.I. Gen. Laws § 9-1-18. In support of his argument, Klunder relies on Cottrell v. Kenney, a 1903 Rhode Island Supreme Court case which holds that, if applicable, the effect of the tolling statute is that "a new time is fixed at which the statute begins to

---

discretion where district court permitted an amendment to include a statute of limitations defense after the case was reversed and remanded on appeal).

-23-

run . . . when the defendant comes or returns into the state."  54 A. 1010, 1012 (R.I. 1903).  Cottrell, however, provides no guidance on the statute's applicability.  For that, one must look to Rouse v. Connelly, 444 A.2d 850 (R.I. 1982).  There, the Rhode Island Supreme Court  adopted  the trial justice's finding that section 9-1-18 provides "special protection" to Rhode Island plaintiffs who were injured by defendants not amenable to process.  Id. at 851. It explained that if a "defendant is amendable to suit by substituted service," the statute does not apply and the limitations period is not tolled.  Id.  The court emphasized that any other interpretation "would permit the unnecessary and indefinite postponement of lawsuits . . . , a result clearly contrary to sound principles of judicial administration."  Id. at 851-52.

Under this framework, Klunder's argument fails for numerous reasons.  First, the statute only protects Rhode Island plaintiffs.  See id.  Though Klunder claims he was a resident of Rhode Island at the time the causes of action accrued (and indeed he very likely may have been one), there is no evidence in the record to support (or reject) this contention.  The burden is on Klunder to establish the applicability of section 9-1-18, so his failure to support his claim of residency is fatal.  See Kelly v. Marcantonio, 187 F.3d 192, 198 (1st Cir. 1999) ("[P]laintiff-appellants bear the burden of proving the applicability of the

tolling provisions contained in [R.I. Gen. Laws] §§ 9-1-19 and 9-1-20."); Bonilla-Avilés v. Southmark San Juan, Inc., 992 F.2d 391, 393 (1st Cir. 1993) ("Since the plaintiffs have the burden to support their claim that the statute was tolled, their failure to introduce into the record the letters upon which they based that claim was fatal to that claim."). Second, there is no evidence in the record that any Appellees were not amenable to process. See Rouse, 444 A.2d at 851. To the contrary, the record suggests that all Appellees were served and appeared before the district court without any difficulty. It was Klunder's obligation to establish otherwise, and, once again, he failed to do so. See Kelly, 187 F.3d at 198; Bonilla-Avilés, 992 F.2d at 393.

Because section 9-1-18 does not toll Klunder's claims, he was required to file suit within three years of, at the latest, September 12, 2007, for the § 1983, civil conspiracy, and breach of the duty of confidentiality and loyalty claims, and September 13, 2007, for the false arrest and false imprisonment claims.[9] He did not do so. Instead, Klunder waited until October 5, 2010, three weeks after the statute of limitations ran. Klunder's claims, therefore, are time barred, and the district court properly disposed of them on Appellees' motions to dismiss and for summary judgment.

---

[9] The parties agree that the applicable statute of limitations for Klunder's claims is three years and that September 12 and 13, 2007, are the relevant dates.

### III.  <u>Conclusion</u>

In sum, we find no errors by the district court.  Brown University is not subject to federal jurisdiction under § 1983 because neither its ability to enact internal statutes and regulations in furtherance of its function as a private educational institution nor its ability to discipline students for violations of its internal policies constitute state action.  Additionally, the district court did not abuse its discretion in granting Brown's motion to amend its answer to include a statute of limitations defense in light of the lack of demonstrable prejudice to Klunder.  Having been properly added to Brown's answer, the defense bars Klunder's claims, as they were filed outside of Rhode Island's three-year statute of limitations and Rhode Island General Laws section 9-1-18 is inapplicable to toll the claims.

**<u>AFFIRMED</u>**.